**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: L'Oreal Benzoyl Peroxide "BPO" Marketing and Sales Practices Litigation** | **MDL DOCKET NO._____** |

<u>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO PURSUANT TO  28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**</u>

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel

on Multidistrict Litigation, Movants Jennifer Snow, Holly Grossenbacher, Ellen Painter, Robert

Hightower, Lucinda O'Dea, Latifah Abednego, and Ciara Noakes respectfully move the Panel for

an Order transferring all of the currently-filed benzoyl peroxide class actions filed against

Defendant L'Oreal USA, Inc. ("L'Oreal") listed in the attached Schedule of Actions ("Actions"),

as well as any cases subsequently filed involving similar facts or claims ("tag-along cases") to the

United States District Court of the District of Hawaii before the Honorable Micah Smith to

facilitate their expeditious litigation.

**I.      INTRODUCTION**

This is a class action lawsuit regarding claims against a single Defendant, L'Oreal.

L'Oreal manufactures, distributes, advertises, markets, and sells benzoyl peroxide products

("BPO Products") that allegedly contain excessive levels of benzene, a carcinogen that has been

linked to leukemia and other blood cancers. BPO Products are used to treat acne and are

intended to be used repeatedly (often multiple times a day).

As of this filing, there are six (6) parallel putative class actions filed against L'Oreal in

three (3) different federal jurisdictions—the District of Hawaii, the Eastern District of

Louisiana, and the Southern District of New York. *See* Exhibit A, Schedule of Actions.

The Panel is generally familiar with the general allegations involved in the Actions, having previously considered and denied centralization under 28 U.S.C. § 1407 several months ago. *See In re: Benzoyl Peroxide Marketing, Sales Practices and Products Liab. Litig.*, __ F.Supp.3d __, 2024 WL 3629067 (J.P.M.L. Aug. 1, 2024). But this petition and the facts underlying it are different, thus justifying a renewed motion for centralization.

Unlike the prior petition, where "[a]t least twelve different defendants or defendant groups [were] named," this petition concerns only one BPO manufacturer—L'Oreal. *Id.* at *2. Unlike the prior petition, where the defendants' various "products var[ied] with respect to their formulations, the quantity of benzoyl peroxide they contain, how the products are packaged and stored, and how they are labeled and marketed," *id.*, the BPO Products at issue here are all formulated, manufactured, packaged, stored, labeled and marketed by the same entity—L'Oreal—so the same defendant-specific variabilities are not at issue. Finally, in its prior order denying centralization, the Panel noted that "concerted efforts to organize the litigation" in defendants' "home jurisdictions or the jurisdictions in which the first-filed action [was] pending" had been made. *Id.* The Panel surmised that "creating defendant-specific 'hubs' ultimately may prove the most efficient means of moving the litigation toward resolution." *Id.* "We are inclined to allow these efforts to self-organize the litigation to play out," the Panel concluded. *Id.*

For the most part, that has happened. Numerous BPO "hubs" have been created in either the jurisdiction in which the first-filed action was pending[1] or in the defendants' home

---

[1] *See e.g., Daugherty, et al. v. Padagis, et al.*, Lead Case No. 3:24-cv-1448 (N.D. Cal.); *In re Crown Labs BPO Sales & Mktg. Litig.*, Lead Case No. 3:24-cv-01448 (N.D. Cal.); and *O'Dea, et al. v. Alchemee, LLC, et al.*, Case No. 2:24-cv-07049 (E.D. Cal.).

jurisdiction.[2] For those BPO "hubs" centralized in California, the litigation has progressed quickly. Parties have filed consolidated class action complaints, propounded discovery, and, in at least one case, engaging in significant motion practice resulting in an order on defendants' motion to dismiss based on preemption, which order is now the subject of an appeal in the Ninth Circuit. *See Montenegro et al. v. RB Health (US), LLC et al.*, No. 24-6684 (9th Cir.). Meanwhile, the case against L'Oreal has lagged. No centralized "hub" for the litigation has emerged. Because there is no centralized forum, no consolidated class action complaints have been filed, no discovery has taken place, and no dispositive motions have been filed, briefed, argued, or ruled upon.

Unlike other circumstances where the Panel has concluded that "either informal coordination among the parties and the courts or Section 1404 transfer, if appropriate, are preferable alternatives to Section 1407 centralization," these options are not viable here. *In re: Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, 829 F.Supp.2d 1376, 1377 (J.P.M.L. 2011). This is because informal coordination between the parties has failed. There is a stalemate over which jurisdiction is the most appropriate forum. Logically, and consistent with the first-filed rule, Plaintiffs assert that the District of Hawaii is the most appropriate forum because it is where the first-filed case (*Snow*) was filed. The second-filed case (*Painter*) also has been appropriately transferred to the District of Hawaii. Undeterred, L'Oreal has argued in the district courts below that the Southern District of New York is the most appropriate venue. L'Oreal has gone so far as to file Section 1404 motions to transfer this litigation to the Southern District of New York in direct opposition to the first-filed rule. New York is where subsequent BPO cases were filed against L'Oreal and it also happens

---

[2] *See e.g., Miller et al. v. Target Corp.*, Case No. 24-cv-1323 (D. Minn); *Hill-Horse et al. v. Target Corp, et al.*, Case No.24-cv-2197 (D. Minn.).

to be L'Oreal's home jurisdiction.

Thus far, L'Oreal's Section 1404 transfer requests have been appropriately denied in favor of the first-filed rule. *See e.g., Painter, et al. v. L'Oreal USA, Inc.*, Case No. 6:24-03077 (W.D. Mo.) (granting plaintiffs' motion to transfer to the District of Hawaii under the first-to-file rule and denying L'Oreal's Section 1404 transfer to the SDNY). Even if L'Oreal's additional efforts to circumvent the first-filed rule in another case (*Grossenbacher*) pending in the Eastern District of Louisiana are successful, that will not resolve the need for Section 1407 centralization. This is because at least two L'Oreal cases will remain pending in the District of Hawaii for the time being, and that court will nonetheless have to decide substantive legal issues (including preemption issues) in the cases pending before it, thus resulting in unnecessarily duplicative litigation, an inefficient use of judicial resources, and the risk of inconsistent rulings in cases pending in other circuits (such as the SDNY).

Under these circumstances, there is no longer "a reasonable prospect" that the resolution of a Section 1404 motion could eliminate the multidistrict character of this litigation. *In re 3M Company Lava Ultimate Prods. Liab. Litig.*, 222 F.Supp.2d 1347, 1348 (J.P.M.L. 2016) (denying centralization where "a reasonable prospect" exists that the court could grant Section 1404 motion). Further attempts by L'Oreal to transfer these actions under Section 1404 would only unnecessarily delay the progress of these Actions. And the mere possibility of future Section 1404 motions filed by L'Oreal is not a basis for denial of centralization. *See In re: Oxycontin Antitrust Litig.*, 314 F.Supp.2d 1388, 1390 (J.P.M.L. 2004) (granting centralization despite the fact that several motions to transfer had been granted and potentially more would be filed).

Based on the numerous common questions of fact involved in the Actions, the compelling needs to establish uniform and consistent standard in conducting pretrial discovery

and motion practice, and to avoid duplication of effort and the possibility of inconsistent rulings, Movants request that the cases be transferred to and centralized in the District of Hawaii, where the first BPO case against L'Oreal was filed and where additional cases have been transferred or are pending a transfer decision. The District of Hawaii is also located in the Ninth Circuit, where several related litigations are pending and where one court's preemption order is already on appeal. Indeed, no jurisdiction has advanced the BPO litigation more than federal judges sitting in the Ninth Circuit. It is the only jurisdiction that has progressed beyond the pleadings stage.

## II.    CASE BACKGROUND

The Actions were filed following the release of testing data by Valisure, LLC ("Valisure") showing that acne treatment products formulated with BPO are fundamentally unstable and degrade into unsafe levels of benzene under normal and expected consumer use, handling, and storage conditions. It is undisputed within the scientific community that benzene is a known human carcinogen. The U.S. Food and Drug Administration ("FDA") recognizes benzene as carcinogen that can cause cancer in humans[3] and classifies it as a "Class 1" solvent that must be "avoided" in drug manufacturing.[4]

On December 27, 2023, in response to reports of benzene contamination in various drug products, the FDA issued an "Alert," stating: "Drug manufacturers with a risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene above 2 ppm[.] … If any drug product batches with benzene above 2 ppm

---

[3] U.S. Food and Drug Administration, *"Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages,"* (Feb. 25, 2022), https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages

[4] Food and Drug Administration, *Q3C – Tables and Lists Guidance for Industry,* https://www.fda.gov/media/71737/download.

are already in distribution, the manufacturer should contact FDA to discuss the voluntary initiation of a recall[.]"[5]

On March 5, 2024, Valisure submitted a Public Citizens Petition to the FDA requesting a recall and suspension of sales of benzoyl peroxide from the U.S. market. The petition was based on Valisure's findings that numerous BPO products contained unsafe and elevated levels of benzene above the FDA's 2 ppm threshold for initiating a recall.[6]

As with other topically applied products, such as sunscreen, the application of BPO Products specifically increases the absorption rate of benzene through the skin, thereby increasing the risk of harm.[7] Indeed, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[8]

The BPO Products are not designed to contain benzene, and certainly not in the dangerous amounts detected in the BPO Products manufactured, distributed, and sold by L'Oreal. Further, although L'Oreal lists the ingredients on the BPO Products' labels, L'Oreal failed (and continues to fail) to disclose on the Products' labeling or anywhere in its marketing that the Products contain benzene or can degrade to form benzene. Despite its knowledge that the BPO Products contain benzene – including in amounts above the FDA's threshold for issuing a recall – L'Oreal has failed to issue a voluntary recall of the Products.

## III.     BPO Litigation Procedural History

---

[5] *See* https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs.
[6] *See* https://assets-global.websitefiles.com/6215052733f8bb8fea016220/65e8560962ed23f744 902a7b_Valisure%20Citizen%20Petition%20on%20Benzene%20in%20Benzoyl%20Peroxide% 20Drug%20Products.pdf (hereinafter, Valisure Citizen's Petition).
[7] *Valisure Detects Benzene in Sunscreen*, VALISURE BLOG (May 25, 2021), https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/.
[8] Facts About Benzene, CENTERS FOR DISEASE CONTROL & PREVENTION, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

On August 1, 2024, the JPML denied the transfer of actions for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. *See In re: Benzoyl Peroxide*, __ F.Supp.3d __, 2024 WL 3629067 (J.P.M.L. Aug. 1, 2024) (hereafter "JPML Order"). In doing so, however, the Panel acknowledged the similarity of the claims, noting that the "actions will present several common issues of fact—primarily whether benzoyl peroxide degrades into benzene, under what conditions, and, if it does create benzene, whether harmful levels of benzene are produced." *Id*. at *1. Thus, commonality of the issues was not the basis for denial. Instead, the reasons were the number of different manufacturer defendants named and variety of products at issue. Moreover, the Panel observed that "defendants have made concerted efforts to organize the litigation on a defendant-specific basis by seeking to transfer claims against them to either their home jurisdictions or the jurisdictions in which the first-filed action is pending," *Id*. at 3. The Panel thus concluded that "creating defendant-specific 'hubs' ultimately may prove the most efficient means of moving the litigation toward resolution." *Id*. "We are inclined to allow these efforts to self-organize the litigation to play out," the Panel said. *Id*.

In the case of Defendant L'Oreal, however, no centralized "hub" has materialized, as there remain six (6) actions pending in three (3) different jurisdictions:

1. *Snow v. L'Oreal USA, Inc., et al.*, Case No. 1:24-00110 (D. Hawaii);

2. *Grossenbacher v. L'Oreal USA, Inc.*, Case No. 2:24-00663 (E.D. La.) (motion to transfer to D. Hawaii pending);

3. *Painter, et al. v. L'Oreal USA, Inc.*, Case No. 6:24-03077 (W.D. Mo.) (subsequently transferred to D. Hawaii under the first-to-file rule);

4. *Odea v. L'Oreal, USA*, Case No. 1:24-02762 (N.D. Ill.) (subsequently transferred to S.D.N.Y.);

5. *Noakes v. L'Oreal U.S.A., Inc.*, Case No. 1:24-02735 (S.D. N.Y.); and

6. *Abednego v. L'Oreal USA, Inc.*, Case No. 1:24-03998 (S.D. N.Y.).

These actions are nearly identical with substantial overlap on issues of both law and fact. All of the cases name L'Oreal as the defendant. All of the cases base their claims on the benzene test results published in Valisure's Citizen's Petition and/or Plaintiffs' own testing of their individual L'Oreal BPO Products. All Plaintiffs rely on the same scientific foundation: that L'Oreal's BPO Products contain benzene and/or degrade to form benzene at standardized temperature intervals that are likely to occur with common use. All Plaintiffs contend that L'Oreal made misrepresentations and/or omissions of material fact about the presence of benzene in its BPO products and/or the risk of benzene exposure. All of these putative class actions allege violations of various consumer protection statutes. They also request the same type of economic damages (refunds) and various forms of injunctive relief. Simply put, the actions represent "parallel litigation." *See* Order (*Painter v. L'Oreal USA, Inc*., Case No. 6:24-cv-03077 (W.D. Mo.) (granting motion to transfer to District of Hawaii, finding that the claims present "parallel litigation" and that *Snow* was first-filed).

Accordingly, Plaintiffs support the transfer of their actions and the other BPO cases listed in the Schedule of Actions, as well as any tag-along cases subsequently filed involving similar facts or claims, to an appropriate transferee forum. Movants submit that the appropriate forum and transferee judge for this nationwide litigation is the U.S. District Court for the District of Hawaii before the Honorable Micah Smith. As noted, Judge Smith currently presides over the first-filed action against L'Oreal in this matter (*Snow*) and the second-filed case (*Grossenbacher*) has recently been transferred to the District of Hawaii under the first-to-file rule.

Absent formal coordination, there will inevitably be duplication of discovery and other

pretrial matters, potentially including inconsistent pretrial rulings on preemption, *Daubert* challenges, and class certification motions, as well as duplication of work for the parties, counsel, and courts. The concern for inconsistent rulings is particularly apt, because there is already one appeal pending in the Ninth Circuit arising out of a preemption order entered in one of the "hubs" created for the BPO litigation in California involving another BPO manufacturer. Thus, failing to consolidate this litigation against L'Oreal in the Ninth Circuit creates the potential that there will be inconsistent rulings involving preemption (and other issues) in the circuits. It is in the interest of judicial economy and consistency for the preemption issue to be considered in a singular tribunal. Formal coordination, whereby a Plaintiffs' Steering Committee is appointed, will alleviate many of these concerns. *See In re: Cooper Tire & Rubber Co. Tires Prods. Liab. Litig.*, 2001 WL 253115, at *1 (J.P.M.L. Feb. 23, 2001) (centralization under Section 1407 granted where "[m]otion practice and relevant discovery will overlap substantially in each action."); *In re: Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (noting that transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").

## IV.    LEGAL STANDARD

Transfer and consolidation are proper if actions pending in different federal district courts involve similar questions of fact to the extent that consolidating pretrial proceedings would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## V.    ARGUMENT

### A.  These Actions are Appropriate for Transfer and Coordination pursuant to 28 U.S.C. § 1407(a).

1.      <u>These Actions Involve Common Questions of Fact.</u>

Section 1407 requires that for centralization to be appropriate, the cases must share "one or more common questions of fact." In assessing whether consolidation is appropriate under section 1407, the Panel looks to the pleadings. The complaints in these cases clearly present common questions of fact.

First, each lawsuit has similar allegations regarding BPO, BPO Products, and the formation of benzene under normal use and handling conditions. Further, each lawsuit seeks economic damages associated with the contamination of BPO Products with benzene. This means multiple, complicated legal and factual issues will drive each of these cases, including:

- Whether BPO products degrade into benzene, and, if so, why;

- The admissibility of experts under *Daubert* concerning the mechanism of the formation of benzene from BPO products and, if relevant, any health risks imposed by such exposure;

- Whether a plaintiff who purchased benzene-contaminated BPO Products sustained an injury under Article III of the United States Constitution;

- Whether being exposed to benzene from a BPO Product is material to the consumer;

- Whether federal law preempts state consumer protection claims related to BPO Products;

- Whether Valisure's Citizen's Petition and related peer-reviewed publication are reliable evidence showing the formation of benzene from BPO Products;

- Whether selling benzene-contaminated BPO Products violates the state consumer protection laws outlined in the various complaints;

- Whether certification of classes of consumers who purchased benzene-contaminated BPO Products is appropriate under Fed. R. Civ. P. 23, for injunctive and/or economic relief, pursuant to consumer protection laws of each state; and

- Determination and structure of class counsel.

As noted, each complaint is based on allegations that L'Oreal's products are contaminated and/or adulterated with benzene, a known human carcinogen, in violation of various state consumer protection statutes and state common law resulting in nationwide product recalls. In addition, the complaints allege similar legal theories and seek certification of similar classes and/or subclasses. This Panel has consistently consolidated cases like this because they inherently involve common questions of fact, particularly where, as here, they involve the same manufacturer defendant. *See, e.g.*, *In re: Johnson & Johnson Sunscreen Mktg., Sales Prac. and Prods. Liab. Litig.*, 568 F. Supp. 3d at 1413-14 (J.P.M.L. 2021); *In re: Abbott Infant Formula Prods. Liab. Litig.*, 2022 WL 3134144, at *1-2 (J.P.M.L. 2022); *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F.Supp.3d 1378, 1379 (J.P.M.L. 2015). Even though the L'Oreal BPO Products used by the Plaintiffs may vary, the same core scientific and legal issues will need to be decided for each— namely, Article III standing, preemption, whether BPO products degrade into benzene and, if so, whether that fact caused an economic injury on the putative classes suitable for class treatment.

2.      Transfer and Coordination Will "Promote the Just and Efficient Conduct of Related Actions."

Here, consolidation will avoid duplicative discovery and prevent inconsistent pretrial rulings—a likely scenario given if this litigation is transferred to the Southern District of New York given that a preemption ruling in the BPO litigation is already on appeal in the Ninth Circuit. With different courts adjudicating identical or substantially similar issues under different circuit case law, a lack of centralization will invariably cause judicial disharmony—all of which centralization under Section 1407 would avoid. This concern for conflicting rulings is not speculative. These Actions cases will be guided by different scheduling orders, and motions will be filed and ruled upon at different times, which means that unsuccessful matters in one jurisdiction can be re-framed and re-litigated in other jurisdictions. This incentivizes forum shopping and

11

strains judicial resources. Consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving the parties' and the judiciary's resources.

Centralization also sidesteps tremendous inefficiencies in the process of conducting discovery. This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). *See also In re Zostavax*, 330 F. Supp. 3d at 1379 (J.P.M.L. 2018) (highlighting that consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings on Daubert issues and other pretrial matters, and conserve resources); *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (same). This includes reducing the cost of document review platforms and depositions for third-party witnesses as well as party witnesses.

### B.  This Panel Should Transfer the Related Actions to the District of Hawaii Before Judge Micah Smith.

The selection of an appropriate transferee court is based on a balancing test of several factors, none of which is dispositive. *See* MANUAL OF COMPLEX LITIGATION (FOURTH) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977). The factors include:

- Where the largest number of cases is pending;

- Where discovery has occurred;

- Where cases have progressed furthest;

- The site of the occurrence of the common facts;

- Where the cost and inconvenience will be minimized; and

- The experience, skill and caseload of available judges.

*Id*.

Applying these factors to the L'Oreal litigation, no set of factors *clearly* tips the balance in favor of any jurisdiction other than the District of Hawaii—the first-filed forum. There are two cases pending in the District of Hawaii, three later-filed cases pending in the Southern District of New York, and one case in the Eastern District of Louisiana awaiting a decision on transfer motions.

Discovery has not progressed in one jurisdiction more than any other.

The site of the occurrence is nationwide insofar as L'Oreal's BPO Products are sold and used nationwide and the *Snow* matter purports to represent a nationwide class with claims being made under the laws of thirteen (13) states.[9] That L'Oreal is based in New York does not change the equation. The relative ease of access to witnesses and evidence is neutralized based on modern technology. The advent of e-discovery and the exceedingly common practice of holding hearings and producing witnesses via Zoom renders the location of witnesses and sources of proof far less significant.

Whether the litigation is centralized on the West or East Coasts is relatively neutral; however, the District of Hawaii would appear to be the more convenient forum—at least for

---

[9] In opposing transfer of the *Painter* case to the District of Hawaii, L'Oreal argued that the District of Hawaii was an improper venue because the court lacked personal jurisdiction over L'Oreal. Although the court left that decision to the judge in the District of Hawaii to determine upon transfer, that argument can be rendered moot by centralization. It is well established that the Panel may transfer actions without regard to the transferee court's personal jurisdiction over the parties. *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (J.P.M.L. 2020).

counsel involved.  This is because counsel for the Plaintiffs in *Snow* and national counsel for L'Oreal are both located in California.

The caseload of available judges favors the District of Hawaii. The Southern District of New York docket is more congested, with forty-five (45) district court judges "presiding over one of the highest civil caseloads in the country."[10] In fact, the Southern District of New York has the highest pending civil caseload of any other district court in the Second Circuit, numbering 12,111 in 2024[11] Conversely, the District of Hawaii has 485 total pending civil cases spread among nine (9) district court judges.

Judge Smith was confirmed to the District of Hawaii in November 2023 and brings 5 years of experience as an Assistant U.S. Attorney the District of Hawaii. Judge Smith also served as an Assistant U.S. Attorney in the Southern District of New York and has prior experience in private practice. Judge Smith is not currently assigned an MDL and is more than capable of efficiently handling a relatively small multidistrict litigation.[12]  This Panel has not hesitated to assign MDLs to jurists who have not yet had an opportunity to preside over an MDL. *See In re Soc'y Ins. Co.*

---

[10] https://www.nysd.uscourts.gov/judges#:~:text=Honorable%20Sarah%20Netburn,been%20assign ed%20to%20their%20case.

[11] https://www.uscourts.gov/statistics-reports/statistical-tables-federal-judiciary-june-2024.

[12] Relatively small MDLs are routinely granted centralization or consolidation. *See, e.g., In re Rust-Oleum Restore Mktg, Sales Prac. & Prods. Liab. Litig.*, 84 F.Supp.3d 1383, 1383 (J.P.M.L. 2015) (consolidating five actions pending in five districts); *In re Hyundai & Kia Fuel Econ. Litig.*, 923 F. Supp. 2d 1364, 1366 (J.P.M.L. 2013) (transferring and consolidating twelve cases); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (transferring and consolidating three cases and six potential tag-alongs);  *In re: GAF Elk Cross Timbers Decking Mktg., Sales Practices and Prods. Liab. Litig.,* 65 F.Supp.3d 1407, 1407, 2014 WL 7006714, at *1 (J.P.M.L. Dec. 12, 2014) (centralizing six putative class actions that involved common questions of fact related to allegedly defective decking products); *In re: Building Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.,* 818 F.Supp.2d 1374 (J.P.M.L.2011) (centralizing five putative class actions that involved common questions of fact relating to allegedly defective roofing shingles).

*COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, Transfer Order at *3 (J.P.M.L. October 2, 2020) (assigning litigation to "Judge Edmond E. Chang, who has not yet had the opportunity to preside over an MDL"); *In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656, Transfer Order at *2 (J.P.M.L. Oct. 13, 2015) (assigning litigation to the "Honorable Colleen Kollar-Kotelly, an able and experienced jurist who has not yet had the opportunity to preside over a multidistrict litigation."); Transfer Order at 3, *In Re: Stryker Orthopaedics LFIT V40 Femoral Head Products Liability Litig.,* (Apr. 5, 2017) (MDL No. 2768) (assigning litigation to Judge Indira Talwani, who "ha[d] not yet had an opportunity to preside over an MDL docket").

Though seldom recognized, factors such as geography also support transfer to Judge Smith in the District of Hawaii. As one federal judge in the District of Kansas recently observed, it is "healthy for the court system for MDLs to be spread around the various districts geographically. In this way, the judiciary can avoid getting to the point where there are established 'MDL courts' and 'transferor courts.'" Benjamin J. Stueve & Stefon J. David, "Lawyered by Good Lawyers and Judged by Good Judges: Multidistrict Litigation in Kansas City's U.S. District Courts," 71 Fed. Law.40, 43 (2024).

1. The First-Filed Case was filed in the District of Hawaii and assigned to Judge Smith.

The Panel has expressly given weight to the location of first-filed case in selecting a transferee district. *See, e.g.*, *In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (noting the presence of the "first-filed" action as an influential factor in the selection of the transferee district); *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (transferring to Oklahoma because "[t]he Oklahoma action is the first-filed action and the most procedurally advanced"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d at 1368 (J.P.M.L. 2019) (noting presence of first-filed case in

district as factor in transferring cases); *In re Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.,* 528 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) (transferring case to Central District of California because, among other reasons, "[t]he first-filed action is pending there."). The first Action alleging that contaminated BPO Products were manufactured and sold by L'Oreal was filed on March 8, 2024 and assigned to Judge Smith in the District of Hawaii. Moreover, the second-filed case (*Pointer*) was recently transferred to the District of Hawaii under the first-filed rule and is likely to be assigned to Judge Smith as a "related action."

    2.  <u>Related Litigation is Currently Pending Appeal in the Ninth Circuit.</u>

    A case from the previously filed petition for consolidation of BPO Actions, *Montenegro et al. v. RB Health (US), LLC et al.,* is currently pending in the U.S. Circuit of Appeals for the Ninth Circuit. *See Montenegro et al. v. RB Health (US), LLC et al.*, No. 24-6684 (9th Cir.). Having the BPO cases against L'Oreal consolidated in the District of Hawaii, which is also part of the Ninth Circuit, would ensure that the related litigations are overseen by the same appellate court and avoid having any similar appellate issues raised across multiple appellate circuits.

    Further, class certification case law, especially regarding consumer protection claims, is well developed in the Ninth Circuit, which should help the parties reach rulings that, win or lose, will avoid protracted appellate litigation and, possibly, lead to quicker resolution.

    3.  <u>Additional Cases Have Been Filed In or Are Pending Transfer to the District of Hawaii.</u>

On November 13, 2024, the United States District Court for the Western District of Missouri granted the plaintiff's motion to transfer a putative class action involving L'Oreal's BPO Products to the District of Hawaii under the first-filed rule. *See Painter*, 2024 WL 4774904 . In doing so, the court denied L'Oreal's alternative motion to transfer the matter to the Southern District of New York. The court held that (1) the cases constituted parallel litigations, (2) no exceptions to the first-

filed rule weighted against transfer, (3) the "convenience of the parties" factor was neutral, and (4) the interests of justice favored transfer to the District of Hawaii. *Id.* at *2-3. Notably, the court also found that "[t]he first-filed rule dictates not only which forum is appropriate, but also which forum should decide which forum is appropriate." *Id.* at *3. Thus, the court held that "[t]here are no compelling reasons not to apply the first-filed rule and transfer this case to the District of Hawaii where it can be adjudicated in tandem with the suit already pending." *Id*.

Additionally, there is a motion currently pending in the Eastern District of Louisiana to transfer another BPO Action against L'Oreal to the District of Hawaii in accordance with the first-to-file rule. *See Grossenbacher et al. v. L'Oreal USA, Inc.*, Case No. 2:24-cv-00663 (E.D. La. 2024).

The District of Hawaii is a strongly favorable venue for consolidating these Actions due to the presence of existing pending cases, the recent and potential future transfer of additional cases to this jurisdiction, and the pendency of appellate litigation on industry-wide issues like preemption.

## VI.   CONCLUSION

Wherefore, for all the foregoing reasons, Movants respectfully request an Order transferring all cases relating to L'Oreal's BPO Products to Judge Micah Smith of the District of Hawaii.


Dated: November 26, 2024                    Respectfully submitted,

                                            By: /s/ R. Jason Richards
                                            R. Jason Richards (SBN: 18207)
                                            **AYLSTOCK, WITKIN, KREIS &**
                                            **OVERHOLTZ, PLLC**
                                            17 E. Main Street, Ste. 200
                                            Pensacola, Florida 32602

17

T: (850) 202-1010
F: (850) 916-7449
jrichards@awkolaw.com

*Attorneys for Movants Holly Grossenbacher,*
*Ellen Painter, and Robert Hightower*

/s/ R. Brent Wisner
R. Brent Wisner (SBN: 276023)
Stephanie B. Sherman (SBN: 338390)
**WISNER BAUM, L.L.P R.**
11111 Santa Monica Boulevard, Suite 1750
Los Angeles, CA 90025
Tel. (310) 207-3233
Fax. (310) 820-7444
bwisner@wisnerbaum.com
ssherman@wisnerbaum.com

*Attorneys for Movant Jennifer Snow*

/s/ Thomas P. Cartmell
Thomas P. Cartmell (SBN: 45366)
Melody R. Dickson (SBN: 61865)
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel. (816) 701-1100
Fax (816) 531-2372
tcartmell@wcllp.com
mdickson@wcllp.com

*Attorneys for Movants Ellen Painter and*
*Robert Hightower*

/s/ Nick Suciu III
Nick Suciu III
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel. (313) 303-3472
Fax. (865) 522-0049
nsuciu@milberg.com

*Attorneys for Movant Lucinda O'Dea*

/s/ Philip L. Fraietta
Philip L. Fraietta
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel. (646) 837-7150
Fax. (212) 989-9163
pfraietta@bursor.com

*Attorneys for Movant Lucinda O'Dea*

By: /s/ *Kristen Cardoso*
Kristen Cardoso (SBN: 338762)
**KOPELOWITZ OSTROW PA**
1 W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Tel. 954-525-4100
Fax: 954-525-4300
cardoso@kolawyers.com

*Attorneys for Movant Latifah Abednego*

/s/ Mark S. Reich Mark
Mark S. Reich (SBN: 4166)
Courtney E. Maccarone (SBN: 5863)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10006
Tel. 212-363-7500
Fax. 212-363-7171
mreich@zlk.com
cmaccarone@zlk.com

*Attorneys for Movant Ciara Noakes*