**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: L'OREAL USA, INC., BENZOYL PEROXIDE MARKETING AND SALES PRACTICES LITIGATION | MDL No. 3141 |

**L'ORÉAL USA, INC.'S OPPOSITION TO MOVANTS' MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.   INTRODUCTION

The Panel is already familiar with the benzoyl peroxide ("BPO") marketing and sales practices putative class actions premised upon flawed testing conducted by Valisure, LLC ("Valisure"). Just a few months ago, the Panel denied Movant Jennifer Snow's[1] 28 U.S.C. § 1407 motion to centralize several BPO class actions against nearly a dozen, unrelated defendants (the "First MDL Petition"). *In re: Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3120, 2024 WL 3629067, at *3 (J.P.M.L. Aug. 1, 2024). Movants have now filed a second Section 1407 motion (the "Motion"), seeking to centralize the six putative BPO class actions against Defendant L'Oréal USA, Inc. ("L'Oréal USA"). The Panel should deny this Motion for two key reasons:

*First*, there has not been any significant change in circumstances since the Panel's denial of the First MDL Petition. There has been no change in the number of cases against L'Oréal USA or the number of counsel involved. All six actions remain effectively stayed pending rulings on the Section 1404 transfer motions.

---

[1] Movant Snow filed the First MDL Petition along with several other plaintiffs represented by the same law firm, Wisner Baum LLP. All Movants eventually filed responses in support of the First MDL Petition, although some Movants disagreed about the proper venue for the proposed multi-district litigation.

*Second*, L'Oréal USA and Movants (the "Parties") are in the process of "self-organizing" the L'Oréal USA BPO cases via Section 1404 transfer motions and have already effectively consolidated several cases by agreement.  There is a ***reasonable prospect*** that the pending Section 1404 motions will result in consolidation of the cases in the Southern District of New York ***for all purposes, including trial***.  Because Section 1404 transfer motions result in a permanent transfer—rather than a temporary transfer for pre-trial proceedings only as under Section 1407—the Panel should allow the Section 1404 transfer process to continue.  In fact, the Panel stated in its Order that "Section 1407 'should be the last solution after considered review of all other options.'"  *In re: Benzoyl Peroxide Mktg.,* 2024 WL 3629067 at *3 (quoting *In re: Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.,* 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012)).

Movants falsely characterize the Parties' self-organization efforts as being at a "stalemate."  They suggest that, without the Panel's intervention, the six cases will proceed on separate tracks leading to inefficiencies and potentially inconsistent rulings.  In reality, Movants are hoping to disrupt the pending Section 1404 motions and avoid transferring the remaining cases to the Southern District of New York.

At a recent hearing on L'Oréal USA's Section 1404 motion to transfer the *Snow* Action, Judge Micah W. J. Smith, of the District of Hawaii, indicated that he was inclined to grant the motion.  As discussed at the hearing, his decision is likely to turn on a yet-to-be-briefed personal jurisdiction issue—whether the District of Hawaii has personal jurisdiction over L'Oréal USA with respect to the claims of *named plaintiffs who are non-Hawaii residents*.  Judge Smith deferred his ruling on the pending motion to allow Movants Painter and Hightower, residents of Missouri, to brief the issue of the whether the District of Hawaii has personal jurisdiction over

L'Oréal USA with respect to their claims. Tellingly, this Motion was filed roughly a week after this hearing and before Judge Smith set a briefing schedule on the personal jurisdiction issue discussed at the hearing.

The Parties' efforts to self-organize have progressed substantially in the few months since the Panel issued its first order. Importantly, the pending Section 1404 motions are reasonably likely to result in the cases being consolidated *for pre-trial and trial proceedings*, a more efficient outcome that is not possible under Section 1407 transfers. The Panel should once again deny transfer under Section 1407 and allow the Parties' self-organization efforts to continue. If the Panel grants the Motion, however, it should transfer the cases to the Southern District of New York, where the most cases are currently pending, where L'Oréal USA is headquartered, and where key witnesses and evidence are likely located.

## II.    BACKGROUND

The parties do not appear to dispute that consolidating the six BPO cases against L'Oréal USA, at least for pre-trial purposes, would streamline the litigation and conserve judicial and party resources.[2] Thus, this brief will not address the allegations in detail, particularly in light of the Panel's prior order. Below is a brief summary of the BPO cases filed against L'Oréal USA, the First MDL Petition, and the Parties' efforts to self-organize the litigation.

### A.    The BPO Cases Against L'Oréal USA.

On March 5, 2024, Valisure submitted to the Food and Drug Administration ("FDA") a citizen's petition (the "Valisure Petition") asserting that over-the-counter acne products containing BPO degrade into benzene under certain conditions. *See* Plaintiffs' Motion for

---

[2] Movant Snow has suggested, however, that she prefers duplicative litigation over litigating her claims outside the Ninth Circuit. Mayhew Decl., ¶ 4, Ex. C (Pl.'s Opp'n) at 6 ("[I]n the absence of a larger MDL [venued in California], Plaintiff's first choice of forum has [sic], and remains, Hawaii.").

Transfer of Actions (Nov. 26, 2024), ECF No. 1 ("Mot.") at 5-6.  On March 8, 2024, Movant Snow filed in the District of Hawaii a putative nationwide class action against L'Oréal USA (the "*Snow* Action").  *See* Declaration of Thomas Mayhew in Supp. of L'Oréal USA's Opp. To Mot. to Transfer Venue ("Mayhew Decl.") ¶ 2, Ex. A (*Snow* Docket).  She alleges that she purchased the La Roche-Posay Effaclar Duo Dual Acne Treatment, but she would not have made the purchase had she been aware of the assertions contained in the Valisure Petition.  Mot., ECF No. 1-4 at ¶¶ 14, 70.

In the weeks and months after the *Snow* Action was filed, several other putative class actions were filed against L'Oréal USA containing similar allegations.  These "tag along" actions included, in order of filing:

- *Mraz v. L'Oreal USA, Inc.*, 1:24-cv-01974-VEC (filed in the Southern District of New York on March 15, 2024 but later voluntarily dismissed), Mayhew Decl., ¶ 6, Ex. E (*Mraz* docket);

- *Grossenbacher v. L'Oreal USA, Inc.*, 2:24-cv-00663-GGG-MBN (filed in the Eastern District of Louisiana on March 15, 2024), Mayhew Decl., ¶ 7, Ex. F (*Grossenbacher* docket);

- *Painter v. L'Oreal USA, Inc.*, 1:24-cv-00512-MWJS-KJM (originally filed in the Western District of Missouri on March 19, 2024 but now pending in the District of Hawaii), Mayhew Decl., ¶ 8, Ex. G (*Painter* docket);

- *Abednego v. L'Oreal USA, Inc.*, 9:24-cv-80351-RLR (filed in the Southern District of Florida on March 22, 2024 but later voluntarily dismissed and refiled), Mayhew Decl., ¶ 9, Ex. H (*Abednego* S.D.Fl. docket);

- *O'Dea v. L'Oreal USA, Inc.*, 1:24-cv-08352-AT (originally filed in the Northern District of Illinois on April 5, 2024 but now pending in the Southern District of New York), Mayhew Decl., ¶ 10, Ex. I (*O'Dea* docket);

- *Noakes v. L'Oreal USA, Inc.*, 1:24-cv-02735-AT (filed in the Southern District of New York on April 11, 2014), Mayhew Decl., ¶ 11, Ex. J (*Noakes* docket); and

- *Abednego v. L'Oreal USA, Inc.*, 1:24-cv-03998-AT (filed in the Southern District of New York on May 24, 2024), Mayhew Decl., ¶ 12, Ex. K (*Abednego* S.D.N.Y docket).

The "tag-along" class actions contained allegations nearly identical to those in the *Snow* Action and also relied upon the Valisure Petition. However, except for the since-dismissed *Mraz* Action, these "tag-along" cases involve different L'Oréal USA BPO products than the *Snow* Action, specifically CeraVe Acne Foam Cream Cleanser with 4% BPO and CeraVe Acne Foaming Cream Wash with 10% BPO.

The six currently pending cases are identified in the Schedule of Actions filed by L'Oréal USA. *See* Schedule of Actions (Dec. 17, 2024), ECF No. 8-1.

### B.      The First MDL Petition and Subsequent Section 1404 Motions.

On May 22, 2024, Movant Snow filed the First MDL Petition. She sought to create an industry-wide MDL, consolidating all cases filed against multiple defendants. On August 1, 2024, the Panel denied the transfer motion, holding that industry-wide centralization and consolidation was not warranted. *In re: Benzoyl Peroxide Mktg.,* 2024 WL 3629067, at *3. The Panel also noted that "defendants have made concerted efforts to organize the litigation on a defendant-specific basis by seeking to transfer claims against them to either their home jurisdictions or the jurisdictions in which the first-filed action is pending." *Id.* at *3. The Panel indicated that it was "inclined to allow these efforts to self-organize the litigation to play out" and that "defendant-specific 'hubs'" would likely "prove the most efficient means of moving the litigation toward resolution." *Id.*

Following the Panel's ruling, L'Oréal USA met and conferred with Movants regarding consolidation of the cases against L'Oréal USA in one venue. Certain of the Movants eventually agreed to transfer or keep their cases in the Southern District of New York, while other Movants sought to transfer to, or stay in, the District of Hawaii. Currently, three cases are before Judge Analisa Torres in the Southern District of New York, two cases are before Judge Micah W. J. Smith in the District of Hawaii, and one case is before Judge Greg G. Guidry of the Eastern

District of Louisiana.  Section 1404 motions to transfer are pending in the latter two courts.  None of the cases have advanced beyond the pleadings stage.

A summary of the Parties' efforts to self-organize these cases is detailed below:

***Snow v. L'Oreal USA, Inc.*, 1:24-cv-00110-MWJS (D. Hawaii)**:  On September 3, 2024, L'Oréal USA filed its motion to transfer the case to the Southern District of New York.  In its motion, L'Oréal USA argued that the Hawaii court lacks personal jurisdiction over L'Oréal USA with respect to the claims brought by named plaintiffs who do not reside in Hawaii and who purchased their BPO products outside of Hawaii.  Mayhew Decl., ¶ 3, Ex. B (L'Oréal's Mot. to Transfer, ECF No. 27).  Thus, L'Oréal USA's motion urged the court to transfer the *Snow* Action to the Southern District of New York—the *only* location in which all six currently pending BPO actions against L'Oréal USA may be consolidated via 1404 transfer motions.

The court held a hearing on the motion on November 14, 2024.  At the hearing, the court stated that a key consideration in ruling on the motion is "whether it is possible here [in Hawaii] to create essentially a defendant-specific hub of the sort that the [Panel] theorized."  Mayhew Decl., ¶ 5 Ex. D (Hearing Transcript) at 3:23-4:2.  The court noted that it clearly "would be possible to create something resembling a defendant-specific consolidated hub in the Southern District of New York given that there are some cases there and that district clearly has personal jurisdiction over L'Oreal."  *Id.* at 4:2-6.

The court addressed the fact that the Western District of Missouri had recently transferred to Hawaii the *Painter* Action, which was filed by Missouri plaintiffs, relating to products purchased in Missouri, and asserting claims under Missouri law.  The court noted that the transfer decision was made "solely on the basis of the first-filed rule" and the Western District of Missouri "explicitly refrained from resolving whether [the District of Hawaii] has personal

jurisdiction over the defendant in connection with that Missouri case, or whether venue is appropriate here." *Id.* at 4:7-13.  Because this is a core issue in the motion to transfer, the court decided to defer ruling until the Missouri plaintiffs could brief the issue.

*Grossenbacher v. L'Oreal USA, Inc.*, **2:24-cv-00663-GGG-MBN (E.D. La.):**  On August 8, 2024, Grossenbacher filed a motion to transfer her case to the District of Hawaii pursuant to the first-to-file doctrine.  On August 27, 2024, L'Oréal USA filed a motion to transfer the case to the Southern District of New York.  The motions have been fully briefed and are still pending.  Mayhew Decl., ¶ 7, Ex. F (*Grossenbacher* Docket).

*Painter v. L'Oreal USA, Inc.*, **1:24-cv-00512-MWJS-KJM (D. Hawaii):**  On August 9, 2024, Movants Painter and Hightower filed a motion to transfer the case to the District of Hawaii.  On August 27, 2024, L'Oréal USA filed a motion to transfer the case to the Southern District of New York.

On November 13, 2024, the court granted Movants' motion to transfer and denied L'Oréal USA's motion to transfer.  The court found that "[t]he first-filed rule dictates not only which forum is appropriate, but also which forum should *decide* which forum is appropriate." Mayhew Decl., ¶ 13, Ex. L (Transfer Order) at 6 (citing *EMC Corp. v. Parallel Iron, LLC,* 914 F. Supp. 2d 125, 129 (D. Mass. 2012)).  The court acknowledged L'Oréal USA's arguments that the District of Hawaii lacks personal jurisdiction over the *Painter* Action but found that this issue should be resolved by the first-filed court:  "If the first-filed court believes it does not have personal jurisdiction or venue is improper, it may transfer the case." *Id.* at 7.

At a hearing on November 14, 2024, Judge Smith of the District of Hawaii stated that he would set a briefing schedule on the issue of whether the court has personal jurisdiction over L'Oréal USA with respect to the claims asserted in the *Painter* Action after it is formally

transferred to the District of Hawaii and assigned to him. However, by the time the case was formally transferred and assigned to Judge Smith, on December 2, 2024, Movants had filed the instant Motion asking this Panel to intervene. *See* Mayhew Decl., ¶ 8, Ex. G (*Painter* Docket). No briefing schedule has been set, and presumably, the court is awaiting a ruling from this Panel on the instant Motion before it sets a briefing schedule.

*O'Dea v. L'Oreal USA, Inc.,* **1:24-08352-AT (S.D.N.Y.):** Movant O'Dea consented to transfer her case from the Northern District of Illinois to the Southern District of New York, and she and L'Oréal USA filed a joint stipulation to transfer the case on September 19, 2024. *See* Mayhew Decl., ¶ 10, Ex I (*O'Dea* Docket).

On October 18, 2024, L'Oréal USA, Noakes, Abednego, and O'Dea[3] filed a joint motion to stay the proceedings in the Southern District of New York pending the resolution of the motions to transfer filed in *Snow*, *Grossenbacher*, and *Painter*. Mayhew Decl., ¶ 14, Ex. M (Joint Letter Mot.) ("Given the possibility that one or more of these cases will be transferred to S.D.N.Y. and that the Parties may then seek to consolidate these cases," the parties request to vacate all pending deadlines). The court granted the motion, and the case is effectively stayed pending resolution of this Motion and the pending Section 1404 motions.

*Noakes v. L'Oreal USA, Inc.,* **1:24-08352-AT (S.D.N.Y.):** Movant Noakes filed a motion to transfer her case to the District of Hawaii pursuant to the first-to-file doctrine on September 13, 2024. She withdrew her motion a week later on September 20, 2024.

The case is currently stayed pending resolution of the Section 1404 motions.

---

[3] At the time the joint motion was filed, *O'Dea v. L'Oreal USA, Inc.* had not yet been assigned a case number in the Southern District of New York, however, counsel for O'Dea signed onto the joint motion. *See* Mayhew Decl., ¶ 14, Ex. M.

***Abednego v. L'Oreal USA, Inc.*, 1:24-cv-03998-AT (S.D.N.Y):** Movant Abednego filed a motion to transfer her case to the District of Hawaii pursuant to the first-to-file doctrine on August 30, 2024. *Id.* L'Oréal USA filed a response in opposition to the motion to transfer on September 13, 2024. On September 19, 2024, Abednego withdrew her motion to transfer.

As addressed above, the case is currently stayed.

### III. ARGUMENT

The Panel has already once denied Movants' request for Section 1407 centralization, and there is no reason to revisit that decision. In its Order, the Panel noted that "defendants have made concerted efforts to organize the litigation on a defendant-specific basis by seeking to transfer claims against them to either their home jurisdictions or the jurisdiction in which the first-filed action is pending." *In re: Benzoyl Peroxide Mktg.,* 2024 WL 3629067 at *3. The Panel stated that it was "inclined to allow these efforts to self-organize the litigation to play out." *Id.* Because Section 1404 motions to transfer are currently pending and are likely to eliminate the multi-district character of this litigation, the Panel should again decline to intervene. *See In re 1-800 Contacts Antitrust Litig.*, 282 F. Supp. 3d 1358, 1360 (J.P.M.L. 2017) (finding that "centralization was not warranted" while Section 1404 motions to transfer were pending).

### A. This Panel Should Once Again Decline to Transfer the Actions Under Section 1407 Because No Change in Circumstances Warrant this Panel Reaching a Different Result.

Just over four months ago, this Panel denied Movants' First Motion to Transfer under Section 1407. Movants now ask the Panel to reconsider that decision as to the claims against L'Oréal USA. "[I]n reconsidering any prior decisions, [this Panel] will reach a different result *only rarely, when a significant change in circumstances has occurred.*" *In re: Hotel Indus. Sex Trafficking Litig*. (No. II), 730 F. Supp. 3d 1360, 1362 (J.P.M.L. 2024) (emphasis added). This is not that rare case.

No *significant change* in circumstances has occurred since the Panel's decision to deny transfer that would warrant a different outcome. No new actions have been filed. The same six actions are pending against L'Oréal USA involving the same counsel who were involved four months ago. *See In re: Plavix Mktg., Sales Pracs. & Prods. Liab. Litig.* (No. II), 923 F. Supp. 2d 1376, 1379 (J.P.M.L. 2013) (granting second motion to transfer where eleven more actions were filed since earlier decision and "the number of law firms in the litigation also ha[d] increased significantly"). None of the cases against L'Oréal USA have advanced past the pleadings stage since the Panel's decision. All cases are effectively stayed while the Parties litigate Section 1404 transfer motions.

The only change is that L'Oréal USA is further along in consolidating the actions in the Southern District of New York than when the Panel issued its first Order. BPO cases against L'Oréal USA are currently pending before three district courts—the Southern District of New York, the District of Hawaii, and the Eastern District of Louisiana. Motions to transfer are pending in the latter two districts. Three of the six cases are now pending in the Southern District of New York; whereas, at the time of the Panel's August decision to deny transfer, two of six cases were pending in the Southern District of New York. The three cases in the Southern District of New York are all related and before Judge Analisa Torres. *See In re: Benzoyl Peroxide Mktg.,* 2024 WL 3629067 at *3 (noting that "in several jurisdictions, multiple actions have been related before a single judge" as part of its reasoning for its decision to allow the parties "efforts to self-organize the litigation to play out"). Thus, to the extent circumstances have changed, there is even less reason to grant the Motion.

Movants argue that the transfer of *Painter* Action to the District of Hawaii and the potential transfer of the *Grossenbacher* Action to Hawaii has effectively created a "stalemate."

They claim that there is no longer any possibility of consolidation through Section 1404 motions. This is false. Judge Harpool of the Western District of Missouri transferred the *Painter* Action to Hawaii so that the Hawaii court (as the first-filed court) could determine which forum is appropriate and whether personal jurisdiction exists in Hawaii over L'Oréal USA with respect to the *Painter* Action:

> The first-filed rule dictates not only which forum is appropriate, but also which forum should *decide* which forum is appropriate. [citation]. If the first-filed court believes it does not have personal jurisdiction or venue is improper, it may transfer the case.

Mayhew Decl., ¶ 13, Ex. L at 6-7. Thus, the Hawaii court is poised to determine whether it can properly exercise personal jurisdiction in Hawaii over a Missouri plaintiff, who alleges she was harmed in Missouri, bringing only Missouri claims. In the event the *Grossenbacher* Action is transferred to Hawaii,[4] the Hawaii court will undertake a similar inquiry with respect to that case.

Thus, no significant changes warranting reconsideration of this Panel's previous order exist. The parties are, through Section 1404 motions to transfer, attempting to consolidate these cases in one forum. The Panel should allow this process to proceed.

> **B.     This Panel Should Decline to Centralize the Underlying Actions Under Section 1407 Because They Are in the Process of Being Centralized Under Section 1404, the Preferred Transfer Mechanism.**

Centralization under Section 1404 is permanent; once a case is transferred under 1404, it is transferred for all purposes, *including trial*. *In re: Gerber Probiotic Prods. Mktg.,* 899 F. Supp. 2d at 1380. In contrast, "[c]entralization under Section 1407 is not permanent." *Id.* This

---

[4] Movant Grossenbacher and L'Oréal USA have filed cross motions to transfer in *Grossenbacher*, and both motions are still pending. Given the circumstances, it appears likely that the court will grant at least one motion and transfer either to the Southern District of New York or to the District of Hawaii.

method of centralization is less efficient because it requires "remand [of] any pending case to its originating court when[] . . . pretrial proceedings have run their course[.]" *Id.* For this reason, "[t]he Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of all other options.'" *See In re: Benzoyl Peroxide Mktg.,* 2024 WL 3629067 at *3 (quoting *In re Gerber Probiotic Prods. Mktg.,* 899 F. Supp. 2d at 1379). "In particular, [the Panel] repeatedly ha[s] noted that where a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization." *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (internal quotation omitted).

      Here, as in the cases above, there is no need for multidistrict consolidation as the Parties are working towards consolidation via Section 1404 motions to transfer—the Panel's preferred method of consolidation. In its Order, the Panel made an affirmative decision "to allow [] efforts to self-organize the litigation to play out." *Id.* Movants' premature Motion to transfer under 1407 is a clear attempt to circumvent the Panel's Order and rulings on the pending motions to transfer. As of the date of this filing, there are pending motions to transfer the *Grossenbacher* Action and the *Snow* Action. Mayhew Decl., ¶¶ 2 & 7, Exs. A & F. The *Painter* case was transferred to Hawaii, under the first-to-file doctrine, for Judge Smith to decide where the case should ultimately be adjudicated. Mayhew Decl., ¶ 13, Ex. L at 6-7. Judge Smith held a hearing on L'Oréal USA's motion to transfer the *Snow* Action to the Southern District of New York the day after the *Painter* Action was transferred to the District of Hawaii. *See* Mayhew Decl., ¶ 5, Ex. D. The hearing made it clear that there was a "reasonable prospect" that the *Snow* and

*Painter* Actions would eventually be transferred to the Southern District of New York under Section 1404.

At the start of the hearing, Judge Smith stated that a "defendant-specific hub" for the BPO cases against L'Oréal USA would be preferable to duplicative litigation:

> Before I turn to argument, I would like to say that it seems to me a key consideration, possibly the key consideration is the question of whether it is possible here to create essentially a defendant-specific hub of the sort that the Judicial Panel on Multidistrict Litigation theorized. It does appear that it would be possible to create something resembling a defendant-specific consolidated hub in the Southern District of New York given that there are some cases there and that district clearly has personal jurisdiction over L'Oreal.
>
> It's less clear to me that it is possible to create a defendant-specific hub here, and it appears to me that the Western District of Missouri transferred its case here solely on the basis of the first-filed rule, explicitly refrained from resolving whether this court has personal jurisdiction over the defendant in connection with that Missouri case, or whether venue is appropriate here.

Mayhew Decl., ¶ 5, Ex. D at 3:23-4:13.

Judge Smith later stated that "in terms of the orderly process of making decisions here," he thought he should first resolve whether there was personal jurisdiction over the *Painter* case because "if the answer is no, then the question of whether to transfer this case to New York becomes a lot clearer . . ." *Id.* at 7:15-20. The instant Motion is an attempt to prevent Judge Smith's "orderly process" from playing out, likely because Judge Smith made it clear that if he determined that he did not have personal jurisdiction over the *Painter* Action, he would likely transfer both *Painter* and *Snow* to Southern District of New York.

Judge Smith appears to agree that consolidation is a key advantage of Section 1404 transfer. In the *Snow* motion to transfer hearing, Judge Smith explained that he thought that "the challenge is just that you have a situation where a transfer of the cases here to New York would

accomplish what the Judicial Panel on Multidistrict Litigation was contemplating which is a defendant-specific hub . . ." *Id.* at 22:20-23. Judge Smith acknowledged that, on the other hand, "keeping *Snow* and keeping *Painter* [in the District of Hawaii]. . . would not, and so . . . there are two sort of separate paths: One is create a defendant-specific hub and the other is create a duplicative litigation." *Id.* at 22:24-23:2 (case names italicized).

Allowing the Section 1404 transfer process to play out, as the Panel envisioned in its first Order, is still the best course of action: this process has the very real possibility of resulting in one consolidated action, an efficient and streamlined outcome that is not possible if the actions are transferred under Section 1407 to the District of Hawaii. For this reason, the Panel should deny transfer under Section 1407. *See In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002) (explaining that "[i]f the Section 1404 motions are granted, all the actions in this litigation will be in a single district for all purposes and not, as is the case with Section 1407 transfer, for pretrial purposes only. Since the result of any Section 1404 transfer would also eliminate any need for our action under Section 1407, the Panel has concluded to deny transfer under Section 1407 at this time").

Transfer under Section 1404 is the more streamlined, efficient path. For this reason, the Panel should deny the Motion.

### C.  If the Panel Grants the Motion, It Should Transfer The Underlying Actions to the Southern District of New York.

#### 1.  The Largest Concentration of Cases Are Pending in the Southern District of New York Where Defendant's Headquarters, Relevant Evidence, and Witnesses Are Located.

This case has its "center of gravity" in the Southern District of New York. *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 190 F. Supp. 3d 1361, 1363 (J.P.M.L. 2016). "The majority of the actions in this litigation are pending" in the Southern District of New York

and Defendant is headquartered in the Southern District of New York "which is where significant and common documentary and testimonial evidence likely will be located." *Id.*; see also Mayhew Decl., ¶¶ 15 & 16, Exs. N (Giraud Decl.) & O (Miladjenovic Decl.). L'Oréal USA's corporate witnesses who can testify as to the formulation, testing, labeling, and marketing of its BPO products are based at L'Oréal USA's New York headquarters or its facility in Clark, New Jersey. Mayhew Decl., ¶¶ 15 & 16, Exs. N & O. "Thus, although this litigation is nationwide in scope, its center of gravity is in [the Southern District of New York]." *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 190 F. Supp. 3d 1361, 1363 (J.P.M.L. 2016) (transferring failure-to-warn class actions to a district near where defendant was headquartered).

The panel considers the location of Defendant's headquarters when choosing a transferee district. This is particularly so in failure-to-warn and misrepresentation cases because it recognizes that important information is likely to be located in that district. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) (transferring deceptive marketing actions to the District of New Jersey based, in part, on the reasoning that because defendant "is headquartered in New Jersey, relevant evidence and witnesses likely are located in the District of New Jersey"). As another example, in *In re M3Power Razor Sys. Mktg. & Sales Pracs. Litig.*, the Panel decided to transfer class actions concerning "whether Gillette misrepresented certain aspects of its M3Power razor system during advertising of the product" to the District of Massachusetts, reasoning that this district was likely to have "relevant documents and witnesses inasmuch as Gillete's headquarters are located there." *In re M3Power Razor Sys. Mktg. & Sales Pracs. Litig.*, 398 F. Supp. 2d 1363, 1364-65. (J.P.M.L. 2005). Movants argue that the defendant's corporate headquarters, and location of witnesses, is

not a relevant factor because widespread use of Zoom hearings and depositions renders travel unnecessary. They cite no case law in support of this argument, and the location of witnesses has continued to be a factor the Panel considers in recent decisions.[5]

If the Panel grants the Motion, it should transfer the actions to the district with the highest concentration of cases and in which Defendant is headquartered—the Southern District of New York.

### 2. The Panel Should Not Consider a Potential for, or Existence of, a Circuit Split in Determining Whether or Where to Transfer Actions.

Movants argue speciously that the actions should be transferred to the District of Hawaii because other "related litigation" is pending appeal in the Ninth Circuit and transfer of these cases outside the Ninth Circuit would lead to "inconsistent rulings." Motion at 9. As an initial matter, this argument ignores the fact that similar BPO class actions are already pending in five separate circuits, and therefore transferring these cases to the Southern District of New York would *not* minimize the risk of a potential circuit split.[6] But more importantly, the potential for a circuit split is irrelevant because the Panel "does not consider the possible implications with respect to . . . potential rulings when it selects a transferee district." *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1325 (J.P.M.L. 2017) (citations omitted). The panel rejected a similar argument in *In re: Equifax, Inc., Customer Data Sec. Breach Litig.* In that case, certain plaintiffs opposed centralization because of the "deep circuit

---

[5] *See, e.g.*, *In Re: Capital One 360 Savings Account Interest Fee Litigation*, MDL No 3111 (J.P.M.L. 2024) (transferring cases to the Eastern District of Virginia, in part, because "Capital One is headquartered in McLean, Virginia, within the district, and Capital One states that much of the relevant evidence and many of the relevant witnesses will be found there"); *In Re: Evolve Bank & Trust Customer Data Security Breach Litigation*, MDL No. 3127 (J.P.M.L. 2024) (transferring cases to the Western District of Tennessee, which is close to their main office).
[6] *See, e.g.*, *Miller et al. v. Target Corp.,* Case No. 24-cv-1323 (D. Minn); *Williams v. Galderma Laboratories, L.P.*, 1:24-cv-02222 (N.D. Ill.); *Mitchell v. Kenvue, Inc.*, No. 3:24-cv-4109-GC-JBD (D.N.J.).

split" on the issue of Article III standing. *Id.* Others preferred centralization only in those districts where there existed "precedent favorable to plaintiffs on the issue of Article III standing." *Id.* The Panel was "not persuaded by these arguments," stating that "transferee courts consider a wide variety of legal issues that are subject to differing precedent in their transferor courts." *Id.*

For a similar reason, the Panel should ignore Movants' merits-based argument that transfer to the Ninth Circuit would be beneficial because "class certification case law, especially regarding consumer protection claims, is well developed in the Ninth Circuit[.]" Mot. at 16. The panel does not consider the substantive law in the proposed transferee forum in deciding whether to transfer to that forum. *See In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 466 F. Supp. 3d 1384, 1385 n.4 (J.P.M.L. 2020) (declining to consider potential barriers to class certification in transferee forum); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. MDL 1720, 2017 WL 4582708, at *1 (J.P.M.L. Aug. 2, 2017) ("It is a 'well-established principle that Section 1407 does not empower the MDL Panel to decide questions going to . . . the merits of a case.'" (quotation omitted)).

### 3. Movants' Arguments Regarding the Supremacy of the First-Filed Rule Are Without Merit.

This Panel previously stated that a defendant's home jurisdiction is an appropriate location for a "defendant-specific 'hub[].'" *In re: Benzoyl Peroxide Mktg.,* 2024 WL 3629067, at *2. Ignoring this statement, Movants take the position that the first-filed location is the *only* appropriate forum for consolidation and that L'Oréal's motion to transfer to the Southern District of New York under Section 1404 is somehow improper. Mot. at 3 ("L'Oreal has gone so far as to file Section 1404 motions to transfer this litigation to New York in direct opposition to the first-filed rule."). This position is unsupported. While this Panel has sometimes transferred

cases to the first-filed location under Section 1404, it is one of multiple factors the Panel considers when selecting a transferee forum. Other factors include the location of a defendant's corporate headquarters, the convenience of witnesses, the numbers of cases pending in each proposed forum, and whether one potential forum has advanced litigation more than another potential forum. *In re: Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 84 F. Supp. 3d 1383, 1384 (J.P.M.L. 2015) (transferring to first-filed district where it was the location of the common defendant's corporate headquarters and the location where the "most advanced action is pending"). Often, the defendant's home jurisdiction and the jurisdiction with the most advanced litigation also happen to be the first-filed forum.[7]

      L'Oréal USA's corporate headquarters are located in Manhattan, in the Southern District of New York. Key witnesses are based out of those headquarters as well as out of L'Oréal USA's nearby facilities in Clark, New Jersey. Three cases are already pending before Judge Torres in the Southern District of New York. For these reasons, if the Panel decides to grant the Motion, it should transfer the cases to the Southern District of New York.

---

[7] Of the four Panel transfer orders Movants cited for proposition that the "first-filed" location is a *key consideration*, two ordered transfer to the jurisdiction that happened to be BOTH defendant's headquarters and the first-filed location. *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019) (transferring cases to the Northern District of California where "JLI is headquartered" and where "most of the key evidence and witnesses are located"); *In re Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.*, 528 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) (transferring cases to the Central District of California because "defendant Mattel is headquartered within this district, [and] relevant documents and witnesses may be found in the Los Angeles vicinity"). In the other two cases cited, all parties agreed to transfer to the first-filed location, which was the location where the litigation had advanced the most. *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020); *In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007).

Respectfully Submitted

Dated:  December 26, 2024                    FARELLA BRAUN + MARTEL LLP

*/s/ Thomas B. Mayhew*
THOMAS B. MAYHEW
One Bush Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 954-4400
Facsimile: (415) 954-4480
Email:  tmayhew@fbm.com

*Attorneys for Defendant*
*L'ORÉAL USA, INC.*